**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ANTWON MANNING,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**J.B. PRITZKER, LATOYA HUGHES, and DARREN GALLOWAY,**<br><br>**Defendants.** | **Case No. 25-cv-1654-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Antwon Manning, an inmate of the Illinois Department of Corrections who is currently incarcerated at Shawnee Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Manning's original Complaint (Doc. 1), which alleged that high-ranking officials retaliated against him by denying his grievances, was dismissed without prejudice for failure to state a claim (Doc. 10). He was granted leave to file an amended pleading. In his Amended Complaint (Doc. 16), Manning once again alleges that high-ranking officials retaliated against him.

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

**The Amended Complaint**

On March 21, 2024, three staff members at Shawnee raided Manning's cell; drugs were found, and he was sent to segregation (Doc. 16, p. 8). Manning believes the cell search was targeted because he wrote grievances and filed lawsuits against the Illinois Department of Corrections' "higher ups" (*Id*.). He asked to be placed on suicide watch and spent five days on watch before being returned to segregation (*Id*.). On March 27, 2024, he spoke with intelligence officer Calvin Pind about the drugs, but he remained silent and made no comment (*Id*. at pp. 8-9). As a result of his refusal to cooperate, Manning received a disciplinary ticket for the drugs and interfering with an investigation (*Id*. at p. 9). On March 29, 2024, he had a disciplinary hearing led by Robert Johnson (*Id*.). Manning believes that the committee lacked impartiality, and they found him guilty of the charges (*Id*.). Manning received two months on C-Grade, two months on B-Grade, and 21 days in segregation (*Id*.).

On April 3, 2024, Manning submitted a grievance about his disciplinary report. On April 9, 2024, grievance officer Quinton Smothers denied the grievance, and Warden Darren Galloway concurred with the decision (Doc. 16, p. 9). Manning alleges that Galloway acted in retaliation for the numerous grievances Manning previously wrote and because he had a pending lawsuit against Galloway (*Id*.). Manning also alleges that the denial of his grievance made Galloway liable for any underlying constitutional violation caused by the disciplinary report because Galloway's concurrence demonstrated his agreement with his subordinates' actions (*Id*. at pp. 9-10). He appealed the grievance to the Administrative Review Board ("ARB") where it was denied by Ryan

Kilduff and Latoya Hughes. Similar to the claims against Galloway, Manning alleges that Hughes's denial of his grievance was an act of retaliation and makes her liable for all underlying violations caused by her subordinates (*Id*. at p. 10).

On April 16, 2024, Manning submitted another grievance because he learned that a change in grade was not an eligible punishment for his violations (Doc. 16, p. 10). The counselor noted that his C-Grade was set to end on May 29, 2024, but did not otherwise address Manning's allegations (*Id*.). The grievance officer denied his grievance noting that the prior grievance raised issues with his discipline (*Id*.). Warden Galloway again concurred in the decision. Manning again argues that Galloway's actions were a form of retaliation (*Id*. at p. 11). Manning submitted this grievance to the ARB, but Kilduff returned the grievance indicating that the issue was addressed by Manning's previous grievance (*Id*.).

Manning alleges that his placement on C-Grade and then B-Grade prevented him from making phone calls and limited his access to a television for a month (Doc. 16, p. 11). The restrictions impacted his "peace of mind." (*Id*.). Manning alleges that he was later physically assaulted by an inmate and both individuals were sent to segregation. Manning does not indicate when this assault occurred (*Id*. at p. 12). Manning was placed in segregation despite not swinging back at the inmate (*Id*.). He also received a disciplinary ticket for the incident. Manning believes that the ticket was an act of retaliation for his numerous grievances. He wrote two grievances about the assault. The first grievance disappeared despite Manning placing it properly in the grievance box (*Id*. at p. 13). He alleges that on two separate occasions, staff members tried to discourage him

from filing a grievance (*Id.*). He submitted another grievance, but the counselor took over three months to respond despite Manning normally receiving responses within two to three weeks (*Id.*). After submitting the grievance to the grievance officer, Quinton Smothers denied the grievance, and Galloway concurred (*Id.*). Manning alleges that Galloway's actions were an act of retaliation (*Id.* at pp. 13-14). Manning submitted the grievance to the ARB where Latoya Hughes concurred in the denial (*Id.* at p. 14). Manning alleges Hughes's denial was an act of retaliation. Manning submitted a second grievance regarding the ticket, arguing that it was an act of retaliation, but this grievance was also denied. Galloway concurred in the denial (*Id.* at p. 15). The ARB returned the grievance because it lacked a response from the counselor (*Id.*). Manning alleges that the return was Latoya Hughes's way of discouraging him from filing grievances, although he alleges the signature on the return was from Ryan Kilduff (*Id.*). Manning believes that Hughes runs a corrupt grievance process to prevent lawsuits from inmates (*Id.*).

Manning wrote letters to Governor J.B. Pritzker complaining about numerous issues at IDOC. Although Manning received notice that the letters were received by the governor's office, he never received a response or acknowledgement of his complaints.

**Preliminary Dismissals**

Manning mentions a number of individuals throughout his statement of claim who are not identified as defendants in the case caption. Specifically, Manning mentions Calvin Pind, disciplinary hearing committee member Robert Johnson, various grievance officials, and unknown correctional officers. In order to be considered a defendant, an individual must be named in the case caption. *See* Fed. R. Civ. P. 10(a); *Myles v. United*

*States*, 416 F.3d 551, 551–52 (7th Cir. 2005). Because Manning fails to identify these individuals as defendants in his case caption, any potential claim against them is **DISMISSED**.

Manning also fails to state a claim against Governor Pritzker. Manning alleges that the governor failed to protect him from the actions of Pritzker's subordinates. But the governor cannot be liable simply as supervisor over the state's agencies because there is no *respondeat superior* (or supervisory) liability under Section 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008); *Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017) ("Public officials are accountable for their own conduct, but they are not vicariously liable for the acts of their subordinates."). Even if the governor received Manning's letters, he is allowed to delegate the care of inmates to prison authorities. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Thus, any potential claim against the governor is also **DISMISSED**.

## Discussion

Based on the allegations in the Amended Complaint, the Court designates the following count:

> **Count 1:** **First Amendment retaliation claim against Latoya Hughes and Garren Galloway for concurring in the denial of Manning's grievances regarding his disciplinary tickets.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be**

**considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[1]

Once again, Manning fails to state a viable claim against any defendant. His Amended Complaint is substantially similar to his original pleading. He alleges that both Warden Galloway and Director Hughes denied his grievances in retaliation for his numerous lawsuits and grievances. He further alleges the denials make them liable for all of the underlying constitutional violations, including the handling of his disciplinary tickets.

To state a retaliation claim, a plaintiff must allege that he engaged in protected activity, "suffered a deprivation likely to deter such activity," and the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014). "The 'motivating factor' amounts to a causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). Once again, Manning merely alleges in conclusory fashion that his previous grievances and lawsuits were a motivating factor for the denial of the grievances at issue in this case. He fails to allege when he submitted these earlier grievances and lawsuits, the nature of those filings, and the defendants' knowledge of those filings. He merely alleges that their concurrence in the grievances was retaliatory. Without more, Manning once again fails to state a claim.

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Although Manning alleges that the officials' participation in the grievance process makes them liable for the underlying constitutional violations, the simple denial of a grievance by officials not involved in the underlying constitutional violation fails to state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). There are no allegations to suggest that Galloway or Hughes participated in the issuance of the disciplinary tickets or the disciplinary hearings. Nor are there any allegations to suggest they violated Manning's rights in any other way.

Even if the officials had participated in the disciplinary proceedings, Manning still fails to state a claim. As the Court previously stated in dismissing Manning's original pleading, his placement on C-Grade does not implicate a liberty interest that would trigger due process protections. *Thomas v. Ramos*, 130 F.3d 754, 762 n. 8 (7th Cir. 1997). And his short stay in segregation would also not trigger protections. Manning fails to include any allegations regarding the discipline he received as a result of the assault. There are simply no allegations suggesting he was deprived of a protected liberty interest.[2]

[2] Even if a protected liberty interest was implicated by his stays in segregation, Manning would only be entitled to informal due process which requires only that an inmate is provided (1) notice of the reasons for his placement in segregation, and (2) an opportunity to present his views in either a written statement or hearing. *Ealy v. Watson*, 109 F.4th 958, 966 (7th Cir. 2024). Manning acknowledges receiving notice and was present at the disciplinary hearing. There are simply no allegations to suggest that his due process rights were violated by the disciplinary proceedings.

Thus, Manning once again fails to state a claim. This is Manning's second attempt to state a viable claim, and he has been unable to do so. The Court finds that further amendment would be futile. His claims are now **DISMISSED with prejudice**.

## Motion for Counsel

With his Amended Complaint, Manning filed a motion requesting the assignment of counsel (Doc. 15). He indicated that he had trouble representing himself because he filed civil cases in the past that were dismissed for failing to do something correctly. But Manning's filings in this case were straightforward and easy to understand. The Court does not find that counsel would benefit Manning or enable him to state a viable claim on these facts. Thus, his request for counsel (Doc. 15) is **DENIED**.

## Disposition

For the reasons stated above, Manning's Amended Complaint is **DISMISSED with prejudice**. The Court counts the dismissal of this action as one of Manning's three "strikes" within the meaning of 28 U.S.C. § 1915(g). The Clerk of Court is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: October 8, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**